# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

ANDRE BUCK,

                    Petitioner,         :    Case No. 1:19-cv-170

      - vs -                         District Judge Susan J. Dlott
                                      Magistrate Judge Michael R. Merz

WARDEN, Chillicothe Correctional
 Institution,
                                  :
                    Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Andre Buck under 28 U.S.C. § 2254, is before the Court for decision on the Petition (ECF No. 4), the State Court Record (ECF No. 7), the Return of Writ (ECF No. 8); and Petitioner's Traverse (ECF No. 11[1]).  The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 13).

**Litigation History**

The Hamilton County grand jury indicted Buck on February 14, 2014, on one count of kidnapping in violation of Ohio Revised Code § 2905.01(A)(1) with firearm specifications (Count

---

[1] Two Traverses have been filed.  ECF No. 11, although received by the Clerk first, bears at later date by Petitioner and will be treated by the Court as the document he intends the Court to consider.

1), and one count of having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(3) (Count 2). (Indictment, State Court Record, ECF No. 7, Exhibit 1). The case was tried to a jury which convicted Buck of kidnapping, but acquitted him on the specifications and weapons under disability charge. *Id*. at PageID 108. The trial judge then sentenced Buck to eleven years imprisonment.[2] *Id*.

Assisted by new counsel, Buck appealed to the Ohio First District Court of Appeals which affirmed the convictions and sentence except for a remand for proper jail time credit. *State v. Buck*, 2017-Ohio-8242, 100 N.E.3d 118 (Ohio App. 1st Dist. 2017), *appellate jurisdiction declined*, 152 Ohio St. 3d 1444, 2018-Ohio-1600.

On September 11, 2017, Buck filed a *pro se* petition for post-conviction relief under Ohio Revised Code § 2953.21 (Petition, State Court Record, ECF No. 7, Ex. 16, PageID 275-79). The Common Pleas Court dismissed the petition as untimely. *Id.* at PageID 317-19. An appeal was dismissed for lack of prosecution when Buck failed to file a brief. *Id.* at PageID 323.

Buck effectively filed his Habeas Corpus Petition in this Court by depositing it in the prison mail system on March 4, 2019. He pleads the following grounds for relief:

> **Ground One:** The trial court erred in denying Mr. Buck's Motion to Suppress.
>
> **Supporting Facts:** Fourth Amendment rights violated by warrantless search, subsequently trial court denied motion to suppress.
>
> **Ground Two:** Mr. Buck was denied his right to due process and a fair trial where the prosecutor engaged in misconduct.
>
> **Supporting Facts:** Prosecutor solicited false testimony from witnesses; prosecutor withheld exculpatory evidence.

---

[2] Because Buck was on post-release control for a prior conviction when he committed the kidnapping, the judge imposed an additional consecutive year for violation of post-release control (State Court Record, ECF No. 11, PageID 108). That sentence is not before this Court.

2

**Ground Three:** Mr. Buck was denied due process and a fair trial where the trial court instigated a heated confrontation with his trial counsel; Mr. Buck was not present for the hearing regarding that incident; where it failed to hold a hearing on a conflict of interest between co-defendant's counsel and Mr. Buck; where it denied Mr. Buck's motion for a mistrial; and where it did not record sidebar conferences.

**Supporting Facts:** Judge assaulted Petitioner's counsel and proceeded with trial without exculpatory evidence; Judge's summary of hearings skewed the facts.

**Ground Four:** The trial court abused its discretion in allowing into evidence extremely prejudicial photographs of Mr. Buck's tattoos.

**Supporting Facts**: Prosecutor presented, and trial court permitted prejudicial non-related evidence with no bearing on the case.

**Ground Five**: Mr. Buck's sentence was contrary to law.

**Supporting Facts**: The judge did not credit Mr. Buck 328 days of jailtime credit.

**Ground Six:** Mr. Buck's conviction was based on insufficient evidence and contrary to law.

**Supporting Facts:** Fourth Amendment violated; inadmissible evidence presented.

**Ground Seven:** The State must present more than a mere conclusory statement to justify a finding of probable cause to conduct a warrantless search of a place based on exigent circumstances. See *State v. Hoffman,* 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993.

**Supporting Facts:** Fourth Amendment violation by a warrantless search; Sate failed to provide reasonable cause for search.

**Ground Eight:** When police enter a dwelling to search for a person based on the exigent circumstances or emergency aid warrant exceptions, and they do not find the person, a warrant is required to search the dwelling's occupants. *United States v. Rivera*, 825 F.2d 152, 157 (7th Cir. 1987), *State v. Martin,* 1st Dist. Hamilton No. C-040150, 2004-Ohio-6433.

**Supporting Facts:** Fourth Amendment violated by a warrantless search; police acted beyond the scope of their authority.

**Ground Nine**: The warrantless download of a cell phone's contents without any justifying exigent circumstances violates a defendant's constitutional right to be free from unreasonable searches and seizures. United States Constitution, Fourth Amendment; Ohio Constitution, Article I, Section 14; *Riley v. California*, 573 U.S. , 134 S.Ct. 2473, 2493, 189 L.Ed.2d 430 (2014); *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949.

**Supporting Facts:** Fourth Amendment violated by a warrantless search; police obtained evidence illegally, subsequently used against Defendant-Petitioner at trial violating due process rights.

**Ground Ten**: A prosecutor engages in reversible misconduct where he purposely fails to disclose a second impeaching police interview of the alleged victim; and where he does not correct a co-defendant witness who commits perjury by testifying that he has not received a plea agreement in exchange for his testimony. United States Constitution, Fifth, Sixth, and Fourteenth Amendments; Ohio Constitution, Article I, Section 16; *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed 781 (1935).

**Supporting Facts:** Prosecutor knowingly elicited false material testimony, without correcting.

**Ground Eleven:** A defendant is denied due process and a fair trial where the trial judge confronts his counsel in anger outside another courtroom for being late to court, curses at counsel, and holds a hearing on the confrontation without the defendant present, because the trial court in that situation has ceased to be impartial. United States Constitution, Fifth, Sixth, and Fourteenth Amendments; Ohio Constitution, Article I, Section 10; *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 747 N.E.2d 166; Crim.R. 43(A).

**Supporting Facts**: Trial conducted by a biased/appearance of biased judge.

**Ground Twelve:** A trial court must investigate a potential conflict of interest between a defendant and his co-defendant's counsel when the potential conflict is brought to the trial court's attention. *State v. Gillard*, 64 Ohio St.3d 304, 1992-Ohio-48, 595 N.E.2d 878; United States Constitution, Sixth Amendment.

4

**Supporting Facts:** Co-defendant's trial counsel was a conflict of interest having priorly [sic] represented Defendant-Petitioner, then advised co-defendant to testify against Defendant-Petitioner.

**Ground Thirteen**: The trial court commits structural error, violates Crim.R. 22, and a defendant's right to a public trial when it purposely does not record sidebar conferences. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038; United States Constitution, Sixth Amendment; Ohio Constitution, Article I, Section 10.

**Supporting Facts:** Court held sidebar conferences without recording.

**Ground Fourteen**: In a kidnapping by force case, the State's use of a defendant's tattoo depicting gun use as evidence of the defendant's propensity for using guns is unduly prejudicial, and cannot be harmless error. *State v. Thomas*, Slip Opinion No. 2017-Ohio-8011; *State v. Huff*, 145 Ohio App.3d 555, 763 N.E.2d 695 (1st Dist. 2001).

**Supporting Facts:** Prosecutor presented, and trial court allowed impermissible prejudicial evidence to be admitted against Defendant-Petitioner.

(Petition, ECF No. 4, PAGEID  55, 57, 58, 60, 62, 64, 66, 68, 70, 72, 74, 76, 78 and 80.)

# Analysis

## Grounds One, Six, Seven, Eight, and Nine:  Violations of the Fourth Amendment

In his First, Sixth, Seventh, Eighth, and Ninth Grounds for Relief, Buck alleges various violations of his rights under the Fourth Amendment in the search, seizure, and subsequent use of evidence in this case.  With respect to each of these claims, Respondent asserts federal habeas review is barred by *Stone v. Powell* (Return of Writ, ECF No. 8, PageID 2521, citing 428 U.S. 465

(1976)).  In that case, the Supreme Court held federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that issue in the state courts.  428 U.S. at 494.  *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does.  The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration of the merits.  *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982).  The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R.Crim.P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R.App.P. 3(A) and Ohio R.App.P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526, citing *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).

Buck asserts in his Traverse that the state courts' decisions on his Fourth Amendment claims were objectively unreasonable applications of Supreme Court precedent under the Fourth Amendment (Reply, ECF No. 11, PageID 2563-65).   Buck's argument misses the point.  If the state courts give a defendant a full and fair opportunity to develop a Fourth Amendment claim, then the habeas court does not review that claim on the merits, which is what would be involved in deciding if the state courts reasonably applied Supreme Court precedent.

Buck relies on the "procedural frustration" exception recognized in *Riley, supra*, but the two procedural problems he notes do not take this case outside *Stone*. One of them, the claim that the trial judge was biased against Buck, is without merit for the reasons discussed below in recommending dismissal of Ground Eleven. The other – the conduct of unrecorded sidebar conferences – pertains to the trial, not the motion to suppress hearing.

Therefore, Buck's First, Sixth, Seventh, Eighth, and Ninth Grounds for Relief should be dismissed as non-cognizable under *Stone*.


**Grounds Two and Ten: Prosecutorial Misconduct**


In his Second and Tenth Grounds for Relief, Petitioner asserts he was denied a fair trial and due process of law when the prosecutor committed misconduct by eliciting false testimony and failing to disclosure exculpatory evidence.

Buck presented these claims as his Second Assignment of Error on direct appeal and the First District decided it as follows:

> **Prosecutorial Misconduct**
>
> {¶ 55} In his second assignment of error, Buck argues that his right to due process was violated by prosecutorial misconduct. He asserts that the prosecutor failed to disclose a second police interview with Tyrell George, and then presented a theory of prosecution based in part on a statement "proven false" by the undisclosed interview. In addition, he argues that the prosecutor allowed a state's witness to "present likely perjured testimony without correction."
>
> {¶ 56} Generally, prosecutorial misconduct will not provide a basis for overturning a conviction unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). The test for whether prosecutorial misconduct mandates reversal is whether the prosecutor's remarks or actions were improper, and, if

so, whether they prejudicially affected the substantial rights of the accused. *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45.

{¶ 57} Failure to Disclose the Second Interview of Tyrell George.

First, Buck argues that the prosecutor failed to disclose that he and Detective Hilbert had interviewed George ten to 15 days after the detective's February 7th interview of George. Buck contends that in the second interview, George revealed that he had voluntarily gotten in the van driven by Barrow to sell marijuana to Barrow. In the first interview, he told Detective Hilbert that he was grabbed off the street.

{¶ 58} At trial, George testified that he had foolishly gotten into the van at Barrow's direction, and that Barrow "had somebody in the back waiting on me, snatched me up, choking me out." On cross-examination, George acknowledged that he had told the police that the "van pulled down on me and snatched me up," and that later on in the first interview, he had said, "[T]hey was [sic] already parked and dude say hey. I'm walking. I turned around a little bit, next thing you know I'm in the back of the van fighting with this dude[.]" When asked whether the police had interviewed him a second time, George initially denied it and then stated, "Not that I can remember. I don't know. I don't remember. I just remember I came up a couple days after it happened and they talked to me, showed me a couple picture."

{¶ 59} The issue of a second George interview arose during the cross-examination of Detective Hilbert by Buck's attorney. The attorney asked whether George, when interviewed on the date of his escape, had mentioned that he was selling marijuana when he was kidnapped. The detective responded that George had not. Then the detective said that he was not surprised when, ten to 15 days later, George told him about the arranged and attempted marijuana sale. At that point, codefendant Barrow's counsel asked the court for a sidebar conference.

{¶ 60} At sidebar, Barrow's attorney indicated that he was not aware that the police had interviewed George a second time. Buck's attorney, on the other hand, at no time asserted that he was unaware of a second interview. Instead, his focus was on exploiting the inconsistencies between George's trial testimony and his first police interview, noting specifically, "my problem is not with [the prosecutor] or Detective Hilbert."

8

{¶ 61} The prosecutor explained to the trial court that he believed he had provided information about the second interview to defense counsel, noting that both defendants had been represented by previous counsel. The trial court noted that there had been no suggestion that the prosecutor had withheld any information.

{¶ 62} As an accommodation to Barrow's counsel, the trial court allowed a brief recess during which the prosecutor and both defense counsel spoke with Detective Hilbert about the second interview. Afterwards, the court noted that the content of the second interview included George's acknowledgement to Detective Hilbert that he had omitted telling the detective that he had arranged to meet Barrow to sell him marijuana.

{¶ 63} Then the court allowed Barrow's counsel to further cross-examine Detective Hilbert about the second interview and whether he had divulged that interview to defense counsel.

{¶ 64} It is not clear from the record that the prosecutor failed to disclose the second George interview. Even if we assume the discovery violation occurred, we hold that the trial court did not abuse its discretion in its handling of the matter.

{¶ 65} Crim.R. 16 controls the discovery process, the purpose of which is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." See Crim.R. 16(A). The rule gives the trial court the discretion to determine an appropriate sanction for a discovery violation. See Crim.R. 16(L); *State v. Wiles*, 59 Ohio St.3d 71, 78, 571 N.E.2d 97 (1991). In making such a determination, the court must consider whether (1) the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the defendant in the preparation of a defense, and (3) whether the defendant was prejudiced. *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 6 Ohio B. 485, 453 N.E.2d 689 (1983), syllabus. The court "must impose the least severe sanction that is consistent with the purpose of the discovery rules." *Id*. at syllabus, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus.

{¶ 66} In this case, the record demonstrates that, even if the prosecutor failed to disclose George's second interview to Buck's

counsel, the discovery violation was not willful. Buck does not contend that his defense would have changed if he had known that George had voluntarily gotten into Barrow's van initially. His defense was not that the victim was not kidnapped, but that he was not involved in the kidnapping.

{¶ 67} The trial court's remedy for the discovery issue was to recess to allow defense counsel to meet with Detective Hilbert and to allow counsel to fully cross-examine the detective on the matter. We note that Buck's counsel expressed no dissatisfaction following his discussion with Detective Hilbert. And Buck has failed to demonstrate that he was prejudiced by the alleged discovery violation. Under these circumstances, we hold that the trial court did not abuse its discretion in handling the potential discovery violation. In addition, as we discuss in addressing Buck's third assignment of error, the trial court properly denied Buck's request for a mistrial.

{¶ 68} On appeal, Buck asserts that, in addition to failing to disclose the second George interview, the prosecutor perpetuated George's "false" narrative about being grabbed off the street in the bill of particulars and in his opening statement at trial.

{¶ 69} The Bill of Particulars. Under Crim.R. 7(E), upon request, "the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense." The limited purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused," but not "to provide the accused with specifications of evidence or to serve as a substitute for discovery." *State v. Sellards*, 17 Ohio St.3d 169, 171, 17 Ohio B. 410, 478 N.E.2d 781 (1985). Under Crim.R. 33(E)(2), a variance between the allegations against the defendant and the evidence at trial is not reversible error unless the defense is prejudiced or misled thereby. "Even a significant factual flaw in the bill of particulars is not reversible error unless the defendant can establish prejudice wherein he was denied a fair trial." *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, ¶ 24.

{¶ 70} In this case, the bill of particulars stated in part:

> At approximately 7:00 P.M. on February 6, 2014, Defendants, acting as principal offenders and/or working in complicity with each other, * * * purposefully by force, threat or deception, removed Tyrelle George from the place where he was found or restrained him of his liberty for the

10

purpose of holding him for ransom or as a shield or as a hostage.

Specifically, Defendants approached the victim as he was walking at or near 330 Forest in the District 4 area of Cincinnati. The victim was overpowered and was thrown into a vehicle. He was bound and blindfolded and was then driven from the area to unknown locations.

{¶ 71} The essential elements of kidnapping and the conduct of the defendants were sufficiently spelled out in the bill of particulars: whether George had entered the van voluntarily or not, the defendants overpowered him, blindfolded him, and took him from the street where he had been. See *Sellards* at 171. Buck has not demonstrated that any variance between the evidence presented at trial and the bill of particulars regarding the manner in which George got into the van was misleading or impaired his ability to defend himself.

{¶ 72} The Prosecutor's Opening Statement. In opening statement, the prosecutor told the jury:

> Tyrell George will tell you that he walked out of his parents' house and was walking down the street * * * and a black van pulls up. * * * Mr. Barrow pulls the car up. Mr. Watson gets out as Mr. George is just walking down the street and grabs him and wrestles with him and throws him in the back of this van.

> And Mr. George is not a huge guy. Looks like he's in pretty good shape to me. He's not going quietly. He's frightened and he's trying to get away. They're trying to put a blindfold on him. They're trying to tie him up. He's trying to resist.

{¶ 73} The prosecutor's opening statement was not evidence and his assertion that George was grabbed and thrown into the back of the van was contradicted by the evidence presented at trial. The trial court properly instructed the jury, "The important thing to remember about opening statements, opening statements are not evidence." We presume that the jury followed the court's instruction, and that it based its decision on the evidence presented at trial. Even if the prosecutor misstated what the evidence would show, it did not deprive Buck of a fair trial. See *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 145.

{¶ 74} The Use of False Testimony. Next, Buck contends that the prosecutor committed misconduct by "failing to correct" (1) George's "false" testimony that he had not been interviewed a second time by police, and (2) the "likely perjured testimony" of codefendant Rucker that the police had made no promises to him in exchange for his cooperation.

{¶ 75} In a claim of prosecutorial misconduct based on the use of false or perjured testimony, the defendant has the burden to "show that (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *State v. Iacona,* 93 Ohio St.3d 83, 97, 2001-Ohio-1292, 752 N.E.2d 937 (2001), quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). Buck has not met this burden.

[*P76] At first, George denied that police had interviewed him a second time, but then said he could not remember, and then said he had talked to them a few days after it happened. "Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor." *State v. Widmer,* 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 41, quoting *Monroe v. Smith,* 197 F.Supp.2d 753, 762 (E.D.Mich.2001). Additionally, the fact "that a witness contradicts [himself] or changes [his] story also does not establish perjury." *Id*.

[*P77] With respect to Rucker's denial that the police had made promises to him, Buck points to a statement in a presentence investigation report: "Detective Hilbert states that they were finally able to get one of the defendants to agree to a plea deal if he helped the investigation." The record reveals, however, that Detective Hilbert testified to the same information at trial to explain why Rucker had not been indicted for a firearm specification: "[Rucker was] a cooperating defendant in a kidnapping investigation and we used him as a witness in this case." And Rucker acknowledged during his testimony that, while the police had made no promises to him, he hoped to avoid prison by testifying about his role in the kidnapping.

{¶ 78} Buck has failed to show that either George's or Rucker's testimony was false and, therefore, has failed to meet his burden to show that the prosecutor committed misconduct by knowingly using false or perjured testimony.

{¶ 79} Consequently, we hold that none of the actions by the prosecutor were improper, and therefore, did not amount to misconduct. See *Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780

N.E.2d 221, at ¶ 45. We overrule the second assignment of error.

*Buck*, 2017-Ohio-8242.

Respondent defends these claims on the merits, arguing that the First District's conclusion is not contrary to nor an objectively unreasonable application clearly established Supreme Court precedent, particularly *Brady v. Maryland*, 373 U.S. 83 (1963) (Return of Writ, ECF No. 8, PageID 2533-39, quoting *Buck*, 2017-Ohio-8242, ¶¶ 55-77).

Buck replies that the Warden's focus on *Brady* is inappropriate, that the real claim is knowing presentation of false testimony (Reply, ECF No. 11, PageID 2569, relying on *Napue v. Illinois*, 360 U.S. 264 (1959), and *Mooney v. Holohan,* 294 U.S. 103 (1935) (*per curiam*)). To prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), quoting *Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), citing *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986). The statement must be indisputably false, rather than simply misleading. *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d at 517. Mere inconsistencies in testimony do not establish the knowing use of perjured testimony. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

The First District applied the standard from *Lochmondy* which the Supreme Court Of Ohio recognized in *State v. Iacona,* 93 Ohio St.3d 83, 97 (2001), quoting *Lochmondy*, 890 F.2d at 822. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States

Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

With respect to the second interview of the victim, Buck has not established a *Brady* violation. Buck and Barrow had been previously represented by counsel other than those who tried the case. Buck has produced no evidence from his prior counsel that the second interview was not revealed to him. Indeed, Buck has produced no evidence from his trial lawyer that the second interview was not revealed to him: he never made such a claim when the issue came up during trial. If the trial lawyer did not received notice of the second interview but still made no claim to that effect at trial, then any *Brady* claim is procedurally defaulted. The point of the *Brady* rule is to make the trial fair, not to allow failure to object to a *Brady* violation so as to permit later vacation of the verdict. Whatever possible incipient Brady violation may have occurred here, the trial judge cured it by allowing the interview with Detective Hilbert.

The First District's ruling on the *Mooney-Napue* claim is also entitled to deference. The fact that a witness such as George testifies inconsistently does not show the witness is perjuring himself, much less that the prosecutor knows which of the inconsistent statements is true and which is false. Buck has also not proved that Rucker's testimony was false. In the Magistrate Judge's experience, it is rare for police or prosecutors to make an explicit promise of leniency to a cooperating witness because of how impeaching such a promise is. It is much more common to see, as apparently happened here, an implicit promise.

The First District's decision on Buck's prosecutorial misconduct claims is neither contrary

14

to nor an objectively unreasonable application of relevant Supreme Court precedent. His Second and Tenth Grounds for Relief should therefore be dismissed.

**Grounds Three, Eleven, Twelve and Thirteen: Denial of Fair Trial**

In his Third, Eleventh, Twelfth, and Thirteenth and Grounds for Relief, Buck complains that he was denied a fair trial and the trial judge was biased against him as manifested in a heated confrontation between the judge and his trial attorney resulting in a hearing at which Buck was not present, failure to record sidebar conferences, failure to declare a mistrial, and in failure to consider a conflict of interest between Buck and counsel for co-defendant Barrow (Reply, ECF No. 11, PageID 2566-67).

The First District decided these claims as follows:

{¶80} In his third assignment of error, Buck argues that he was denied a fair trial. He contends that the trial court: (1) ceased to be impartial after instigating a confrontation with his trial counsel and then conducting a hearing on the incident outside of his presence; (2) failed to investigate a potential conflict of interest between Buck and his codefendant's counsel; (3) failed to grant a mistrial after the prosecutor's misconduct; and (4) failed to record sidebar conferences. Buck claims that these failures denied him due process and resulted in an unfair trial.

{¶81} Lack of Impartiality. The record reveals that on the fifth day of the trial, the judge conducted an in-chambers discussion that occurred on the record and outside the presence of the jury at the request of Buck's defense counsel. The discussion centered on an incident that had just occurred outside the courtroom, wherein the trial judge angrily ordered defense counsel to the courtroom. Defense counsel took umbrage, and asserted that the judge had demonstrated bias. The judge explained that he had reacted in that manner because he was frustrated by counsel's tardiness, and apologized.

{¶82} It is fundamentally unfair for a criminal defendant to be tried before a biased judge. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34, citing *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). A trial before a judge that is not impartial results in structural constitutional error that would require reversal without resort to a harmless-error analysis. *State v. Sanders,* 92 Ohio St.3d 245, 278, 2001-Ohio-189, 750 N.E.2d 90 (2001), citing *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

{¶ 83} The Supreme Court of Ohio has described judicial bias as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶ 84} Confrontation and Hearing Outside Defendant's Presence. First, he points to the judge's angry confrontation with his defense counsel. "[S]harp words spoken by a trial court to counsel do not by themselves establish impermissible bias. There is a 'modicum of quick temper that must be allowed even judges.'" *Sanders* at 278, citing *United States v. Donato,* 99 F.3d 426, 434, 321 U.S. App. D.C. 287 (D.C.Cir.1996), quoting *Offutt v. United States,* 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954). The United States Supreme Court has explained:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. * * * Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky v. United States*, 510 U.S. 540, 555-556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

16

{¶ 85} In this case, even if the judge used profanity in speaking with defense counsel and expressed impatience with counsel, the episode occurred outside the courtroom and out of the jury's presence, and by itself demonstrated no bias or partiality of the judge.

{¶ 86} Buck also complains that he was denied due process because he was not present at the in-chambers discussion about the incident between the trial judge and defense counsel. He argues that he was entitled to be at the discussion because it was a critical stage of the trial.

{¶ 87} While a criminal defendant has a fundamental right to be present at all critical stages of his trial, *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 100; Article I, Section 10, Ohio Constitution; Crim.R. 43(A), prejudicial or constitutional error does not necessarily result from the defendant's absence. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 139; *State v. Green,* 90 Ohio St.3d 352, 371, 2000-Ohio-182, 738 N.E.2d 1208 (2000). "[I]n certain circumstances, a defendant's absence from a discussion at which his counsel are present does not offend due process." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 50, citing *United States v. Gagnon,* 470 U.S. 522, 527, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985).

{¶ 88} Buck has failed to establish that he suffered any prejudice from not being present for this in-chambers and on-the-record discussion. Moreover, Buck implicitly waived his presence for the discussion because it occurred and was recorded at the request of defense counsel, who was authorized to waive Buck's presence. See *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 122, quoting *Gagnon* at 528 (the trial court "need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have a right to attend").

{¶ 89} Conflict of Interest with Codefendant's Counsel. Next, Buck argues that the trial court failed to investigate a potential conflict of interest between Buck and his codefendant's trial counsel, who had once represented Buck in a criminal case. Buck asserts that the court's failure to investigate the conflict arising from counsel's successive representation of him and then Barrow denied him a fair trial.

{¶ 90} A trial court has a duty to inquire into a potential conflict only where it knows or reasonably should know of an attorney's possible conflict of interest in the representation of a criminal defendant. *State v. Gillard*, 78 Ohio St.3d 548, 552, 1997-Ohio-183,

17

679 N.E.2d 276 (1997); *Mickens v. Taylor*, 535 U.S. 162, 168, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). This "is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict, such as that which 'inheres in almost every instance of multiple representation.'" *Mickens* at 168-169, quoting *Cuyler* at 348.

{¶ 91} The court's failure to conduct the inquiry, however, does not require a reversal unless an actual conflict is found. *Gillard* at 552. An actual conflict may be found where counsel actively represents conflicting interests. *State v. Manross*, 40 Ohio St.3d 180, 182, 532 N.E.2d 735 (1988). "Conflicts may arise when an attorney simultaneously represents clients with different interests (multiple representation), or when an attorney representing a defendant has previously represented co-defendants or trial witnesses (successive representation)." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir.2003), quoting *United States v. Shepard*, 675 F.2d 977 979 (8th Cir.1982). "It is more difficult for a defendant to show that counsel actively represented conflicting interests in cases of successive rather than simultaneous representation." *Id*.

{¶ 92} Here, on the tenth day of trial, just before closing arguments, Buck's counsel informed the court that Buck had just told him that Barrow's counsel had represented him nine years earlier. At that point, Barrow's counsel told the court that he could not recall if he had represented Buck. The trial court expressed skepticism about the timing of Buck's concern because the trial was in its second week and because Barrow's counsel had been involved in the case for quite some time. The court pointed out that Barrow testified that Buck had had nothing to do with the charged offense and that Barrow's counsel had done nothing to try to incriminate Buck. Buck's response was that he had not realized earlier that there was a potential conflict.

{¶ 93} Buck has not demonstrated that he was prejudiced as a result of Barrow's counsel's representation of him nine years earlier. At most, he claims that if he had testified, "it would have behooved co-defendant's counsel to press Mr. Buck to testify that a staged kidnapping is in fact what took place—a proposition that would have been directly contradictory to Mr. Buck's defense." But Buck did not testify, and any potential effect of the previous representation is speculative. Therefore, the trial court did not err by failing to further investigate the matter.

• * * *

{¶ 103} Failure to Record Sidebar Conferences. Buck complains that the trial court denied his right to a public trial and violated Crim.R. 22 by failing to record all of the sidebar conferences. During recesses throughout the trial, the court summarized the content of preceding sidebar conferences, and then asked whether the parties had additions or corrections to make to the summaries. Defense counsel did not object to this procedure.

{¶ 104} Crim.R. 22 requires the trial court to record all proceedings (including sidebar conferences) in serious-offense cases, and the court's summary of sidebar conferences in lieu of a recording is error. *State v. Simmons*, 2014-Ohio-3695, 19 N.E.3d 517, ¶ 80 (1st Dist.); *State v. Davis*, 1st Dist. Hamilton No. C-130198, 2014-Ohio-794, ¶ 13. However, the defendant must show prejudice from the failure to record, especially where the defendant fails to object to the procedure used the by trial court. *Simmons* at ¶ 81.

{¶ 105} In this case, defense counsel was given an opportunity to comment on the trial court's summary, to add anything counsel wanted, to clarify the summary, or to object to it in any way. Counsel did not do so, and we therefore presume the summaries are accurate.

{¶ 106} If Buck believed that the trial court's summaries were inaccurate, he had the burden to supplement the record. Where a trial court fails to record sidebar conferences, the defendant bears the burden of reconstructing the off-the-record discussion pursuant to App.R. 9(C). *Davis* at ¶ 14. In this case, by failing to supplement the record with an alternative statement of what transpired, Buck has accepted the trial court's summaries as accurate representations of what occurred during the unrecorded sidebar conferences. *Id.*

{¶ 107} The trial court erred by failing to record the sidebar conferences. But because Buck has failed to demonstrate any resulting prejudice, we overrule the third assignment of error.

*Buck*, 2017-Ohio-8242.

**Judicial Bias**

Buck claims the trial judge was biased against him as evidenced by the judge's confrontation with his trial attorney.

19

The First District opinion does not recount the content of the confrontation, but notes that it apparently arose from the trial judge's anger at Buck's trial attorney's tardiness, it did not happen in the presence of the jury, and its resulted in a hearing at defense counsel's request that involved an apology from the judge.

While the Supreme Court has had a number of occasions to opine on judicial bias, almost all of them have involved the interpretation and enforcement of the Canons of Judicial Ethics. However, in *Tumey v. Ohio*, 273 U.S. 510 (1927), the Court held the Due Process Clause incorporates the common-law rule requiring recusal when a judge has a direct, personal, substantial, pecuniary interest in a case. *Tumey* involved a traffic court judge who was compensated more for a finding of guilt than innocence. 273 U.S. at 533. It was only eighty-two years after *Tumey* that the Court next found a set of facts that was constitutionally disqualifying. In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), it reversed a decision of the West Virginia Supreme Court on bias grounds where the deciding vote was cast by a justice who had essentially been placed on that court by the efforts and money of one of the parties. The Court extended *Caperton* in *Williams v. Pennsylvania*, 579 U.S. ___, 136 S. Ct. 1899 (2016), holding that a person who as district attorney approved seeking the death penalty may not later hear as appellate judge a postconviction matter in the same case. "A constitutionally intolerable probability of actual bias exists when the same person serves as both accuser and adjudicator in a case." *Williams* reiterated the rule on which Petitioner relies that trial by a biased judge is a structural error.

Nothing like the facts of *Tumey*, *Caperton*, or *Williams* is presented here. The facts as recited in the First District's opinion[3] show a judge expressing his anger at an attorney's tardiness,

---

[3] Buck has not attempted to show that these factual findings are unreasonable.

then apologizing on the record for the intemperate expression of that anger.  Even under the stricter

judicial ethics canons, the Supreme Court held in *Liteky*:

> *Not* establishing bias or partiality, however, are expressions of
> impatience, dissatisfaction, annoyance, and even anger, that are
> within the bounds of what imperfect men and women, even after
> having been confirmed as federal judges, sometimes display.  A
> judge's ordinary efforts at courtroom administration — even a stern
> and short-tempered judge's ordinary efforts at courtroom
> administration — remain immune.

510 U.S. at 555-56 (emphasis in original).  The trial of this case consumed at least ten days of trial

court time, even though it involved only a single incident crime.  Given the time pressure applied

by the number of criminal cases in an urban felony court such as the Hamilton County, Ohio, Court

of Common Pleas and the Speedy Trial Act, Ohio Rev. Code §§ 2945.71-73, it is hardly surprising

that a judge would become upset at a trial attorney's tardiness.  That the judge expressed that anger

forcefully but outside the presence of the jury does not display any deep-seated bias against Buck

or his attorney and does not rise to the level of a constitutional violation.

The fact that the hearing on the confrontation occurred out of the Petitioner's presence also

does not constitute a constitutional violation.  That was done at the request of defense counsel who

had the implied authority to waive Petitioner's presence.  Furthermore, as the First District found,

Buck has shown no prejudice from his exclusion:  he has not suggested what his presence would

have added.  Accordingly, Buck's judicial bias claim is without merit.

**Conflict of Interest**

Buck argues he was deprived of a fair trial because his co-defendant Barrow's counsel had

represented Buck in a criminal case nine or so years in the past.

21

Where a criminal defendant can prove that his attorney actively represented actual conflicting interests, ineffectiveness will be found and there is no need to show prejudice resulting from the conflict. *Cuyler v. Sullivan,* 446 U.S. 335 (1980); *Thomas v. Foltz*, 818 F.2d 476 (6th Cir. 1987). The burden of proof of actual conflict is on the Petitioner. *Cuyler*, 446 U.S. at 348 n.14. The conflict must be actual and significant. *Thomas,* 818 F.2d at 481. The presumed prejudice standard of *Cuyler* is clearly established only when the conflict is due to multiple concurrent representations. *Mickens v. Taylor*, 535 U.S. 162 (2002).

The First District effectively found that Buck and Barrow's interests did not conflict: Barrow's counsel had done nothing to incriminate Buck and Barrow had testified Buck was not involved in the crime. While a conflict of interest between criminal defendants is not uncommon, Buck has not shown there was any actual conflict here.

Moreover, as the First District found, the representations were not concurrent: Barrow's attorney's representation of Buck has ended many years before and there is not even a suggestion that Buck had, during the prior representation, conveyed confidences to the attorney which were now being used against him. Essentially Buck's position suggests there should be a *per se* rule against a criminal defense attorney's ever appearing in a second case where a former client is a co-defendant. A moment's reflection will show how unworkable such a rule would be in an era when so many criminal defendants are represented by employee attorneys of public defender offices.

**Denial of a Mistrial**

Petitioner claims the trial court's failure to declare a mistrial as a sanction on the prosecutor for the asserted *Brady* violation deprived him of a fair trial. The First District dealt with the mistrial

22

issue as follows:

{¶ 95} The decision whether to grant or deny a mistrial "lies within the sound discretion of the trial court." *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623 (1995). A mistrial should be declared only when justice requires and when a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

{¶ 96} As we have stated, a trial court has discretion in determining a sanction for a discovery violation. *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, at ¶ 33. See discussion at ¶ 65.

{¶ 97} At the close of the state's case, Barrow's defense attorney moved for a mistrial on the basis that he had believed that the police had only interviewed George once, and that Barrow had been prejudiced as a result. Buck's defense attorney joined in the motion, but offered no argument. We note that it is not clear from the record that the prosecutor had not disclosed the second interview to Buck because his attorney never made such a representation to the court.

{¶ 98} The prosecutor responded that he had had meetings with the defense and had provided them with all the information that he had. He said that he and Detective Hilbert had communicated the substance of the second interview to Barrow's prior counsel. He said that Barrow's trial counsel had told him that Barrow's prior counsel had gotten rid of his case file, so the prosecutor did his best to ensure that both defense counsel had all of the information that had been previously disclosed.

{¶ 99} The trial court denied the motions for a mistrial, stating that while there was a discrepancy as to "who knew or who didn't know and what was turned over to prior counsel," the defense had adequately dealt with what they had learned about the second interview.

{¶ 100} When the codefendant's counsel asserted surprise at the second interview, the court noted that there had been no assertion that the prosecutor willfully withheld the information and that it may have been provided to prior defense counsel. The court recessed so that defense counsel could meet with the prosecutor and Detective Hilbert to discuss the content of the second interview and allowed counsel to cross-examine the detective about whether the interview had been withheld.

{¶ 101} Buck asserts, for the first time on appeal, that the late disclosure prevented him from cross-examining Detective Hilbert about the discrepancies between the two interviews. He does not say how the discrepancies would have aided his defense. According to Detective Hilbert, there were no discrepancies, just new information about a prearranged marijuana sale. And Buck's counsel had already begun cross-examining the detective about the drug deal before Barrow's counsel asserted surprise at another interview.

{¶ 102} At trial, Buck's counsel raised no concern about discrepancies between the two interviews. Rather, he explained to the trial court that the only discrepancies he wanted to explore were those between George's first interview and his trial testimony. Under these circumstances, we cannot say that the trial court abused its discretion by overruling Buck's motion for a mistrial related to the alleged discovery violation. Buck has failed to establish that a fair trial was no longer possible.

*Buck*, 2017-Ohio-2842. Buck has not suggested how the failure to declare a mistrial proved judicial bias or was in any way an unreasonable application of clearly established Supreme Court precedent. Since it is unclear that any *Brady* violation occurred, particularly as it concerns Buck, it is even less arguable that any discovery violation required a mistrial. Mistrials are "expensive" in the sense that they consume judicial and jury resources without a final result. Because of this, it has been the law since the early days of the Republic that a mistrial should be declared only when there is "manifest necessity" for it. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580 (1824) (Story, J.). There was no manifest necessity for a mistrial here; the trial judge adequately dealt with any possible prejudice from late revelation of the second George interview.

**Unrecorded Sidebar Conferences**

As the First District found, Ohio law requires making a record of sidebar conferences, which was not done in this case. The First District, however, found that any error had been

24

forfeited by failure to provide any corrections to the trial court's summary of what occurred.

Buch responds in his Traverse that he has a constitutional right to a public trial which was violated by this failure to record the sidebars. Noting that denial of a public trial is a structural error to which harmless error analysis is not applicable, Buck claims a right to issuance of the writ (Reply, ECF No. 11, PageID 2567).

The practice of conducting sidebar conferences is ubiquitous in trial practice. Most often it is used to resolve an evidentiary objection outside the hearing of the jury but without taking a formal recess and removing the jury from the courtroom. The benefit to judicial economy is obvious: the jury is not inconvenienced and distracted by leaving the courtroom every time an evidentiary issue must be resolved.

Because issues resolved at sidebar may give rise to issues on appeal, it is common practice to record sidebar conferences and Ohio law requires recording in serious offense cases. The Magistrate Judge agrees with Petitioner that denial of a public trial is indeed a structural error. *Waller v. Georgia*, 467 U.S. 39 (1984). However, the Magistrate Judge is unaware of any Supreme Court precedent, indeed any federal precedent at all, holding that conducting a sidebar conference without making a record constitutes denial of a public trial.

Buck has not shown that the First District's decision on the unrecorded sidebar conference issue is contrary to or an unreasonable application of clearly established Supreme Court precedent.

Grounds Three, Eleven, Twelve, and Thirteen are without merit and should be dismissed.


**Ground Five:  Denial of Jail Time Credit**


This Ground for Relief is rendered moot by the correction of the jail time credit on remand.

**Grounds Four and Fourteen: Admission of Tattoo Photographs**

In his Fourth and Fourteenth Grounds for Relief, Petitioner complains that the trial court

improperly admitted pictures of tattoos on his body which displayed guns. Buck raised this claim

as his Fourth Assignment of Error on direct appeal and the First District decided:

> {¶ 112} In this case, we find that the tattoo evidence meets none of these relevance criteria and that the court abused its discretion in admitting the photographs. See *State v. Huff,* 145 Ohio App.3d 555, 566, 763 N.E.2d 695 (1st Dist.2001). Even if the tattoo evidence was relevant, if it invites the jury to draw an improper inference about the defendant's character, its probative value may be substantially outweighed by the danger of unfair prejudice. *McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 196. In this case, any probative value that the tattoo photographs may have had was substantially outweighed by the danger of unfair prejudice because the photographs may have encouraged the jury to draw an improper inference about Buck's familiarity with guns and his willingness to use firearms to commit crimes. See *id.* at ¶ 196 ("straight killer" tattoo showed the defendant's "comfort with death and guns" and may have led to an improper inference that he committed murders). The trial court abused its discretion in admitting the tattoo photographs. *Id.*

> {¶ 113} Even so, we hold that the error in the admission of the photographs was harmless because there is no reasonable probability that the evidence contributed to Buck's conviction. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 28. Given the overwhelming evidence of Buck's guilt, we cannot say that but for the tattoo photographs, the outcome of the trial would have been different. *McKelton* at ¶ 197; *State v. Arnold,* 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 50, citing *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37. We overrule the fourth assignment of error.

*Buck*, 2017-Ohio-2842.

Buck presented this claim to the First District as a trial court error in the admission of

evidence in that the tattoos were irrelevant and prejudicial.  As its standard for evaluating this claim, the First District wrote:

> {¶ 109} The admission of evidence is within the sound discretion of the trial court. See *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 61. We will not disturb a trial court's ruling on evidentiary issues on appeal absent an abuse of discretion and proof of material prejudice. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 181; *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 116. An abuse of discretion occurs if the trial court's decision is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983).

*Buck*, 2017-Ohio-2842.      Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida*, 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); accord:  *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825) (Marshall C.J.); *Bickham v. Winn*, 888 F.3d 248, 253 (6th Cir. 2018) (Thapar, J., concurring in part).  In particular, this Court may not decide whether admission of the tattoos was a violation of Ohio evidence law or even if it was an abuse of discretion to admit them.  Abuse of discretion is not a denial of due process.  *Sinistaj v. Burt,* 66 F.3d 804, 807 (6th Cir. 1995).

Petitioner's particular claim is that these photographs of tattoos were improper character evidence, much like the admission of other bad acts to prove propensity or character.[4]  While admission of other bad acts evidence is widely condemned. the Supreme Court has never declared

---

[4] Petitioner did not testify at trial, so evidence of his character was not admissible.

it to be unconstitutional. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), citing *McGuire*, 502 U.S. at 75 (noting that the Supreme Court refused to reach the issue in *McGuire*).

Buck relies on *Dawson v. Delaware* (Reply, ECF No. 11, PageID 2568-69, citing 503 U.S. 159 (1992)). In that case the Supreme Court held admission of evidence of Dawson's membership in the Aryan Brotherhood at the penalty phase of his capital trial violated his First Amendment rights because it concerned only his abstract beliefs and was not relevant character evidence because both he and his victim were white. 503 U.S. at 167-68. Buck makes no First Amendment claim here.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

June 3, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.